# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| In re:  General Motors Corporation,  )<br>"Piston Slap" Products Liability Litigation,  )<br>                                                                )<br>Judge Joe Heaton                                        )<br>                                                                ) | Case No.  MDL 04-1600<br><br><br><br>**(This document relates to ALL CASES)** |

## ORDER AS TO SUBJECT MATTER JURISDICTION

This federal multi-district litigation (MDL) proceeding presently includes nine putative class actions transferred by the MDL panel, plus one case initially brought in Oklahoma and removed to this court.[1]  Jurisdiction is based on diversity of citizenship.  The complaints assert various claims, but all have the same factual premise – the defendant sold the plaintiffs vehicles with defective engines.  The asserted defect, referred to as "piston slap," allegedly results from excessive clearance between the pistons and the sides of the cylinder walls or bores.  The plaintiffs contend the alleged defect causes a loud knocking noise during the period after startup of the motor, damages the engine, wastes fuel and oil, causes significantly higher vehicle emissions, reduces the vehicle's power and performance, and lowers the vehicle's resale value.  While not identical, the complaints generally allege state law claims for violations of consumer protection acts and/or deceptive trade practice acts, breach of warranties and unjust enrichment and seek compensatory damages, declaratory and injunctive relief, costs and attorney's fees.[2]

---

[1]*The nine actions were filed initially in federal district courts. Two additional cases that were originally filed in state courts in Florida and Georgia, then removed to federal courts and transferred to this district, have been remanded.*

[2]*Negligence claims also are alleged in the <u>Powell v. General Motors Corp.</u> and <u>Gouthro v. General Motors Corp.</u> cases.*

The jurisdictional allegation in most of the cases consists of: "This Court has jurisdiction under 28 U.S.C. § 1332." One complaint asserts that damages exceed $75,000, but none specify the amount of damages the plaintiffs seek to recover. As it was not apparent from the face of the complaints whether the claims satisfy the $75,000 amount in controversy requirement of 28 U.S.C. § 1332(a), the court raised the jurisdictional issue sua sponte and directed the parties to brief it.[3] A hearing was subsequently held and supplemental briefs addressing jurisdiction were then filed. Having considered the parties' submissions and oral arguments, the court concludes it has subject matter jurisdiction. The reasons for that determination follow.

Although only one of the MDL cases originated in this district, Tenth Circuit law governs the jurisdictional issue. In re Bridgestone/Firestone, Inc., Tires Products Liability Litig., 256 F.Supp.2d 884, 888 (S.D. Ind. 2003)("Bridgestone") (law of the circuit where the transferee court sits governs federal issues in MDL proceedings). Previously in this circuit each class member had to meet the jurisdictional amount. *See* Martin v. Franklin Capital Corp., 251 F.3d 1284, 1294 (10th Cir. 2001), *cert. granted*, ___ U.S. ___ (2005). However, the Supreme Court recently interpreted 28 U.S.C. §1367 to resolve a split among the Courts of Appeals. In Exxon Mobil Corp. v. Allapattah Servs., Inc., ___ U.S. ___, ___ (2005) the Court held:

---

[3] *"[T]he parties cannot 'concede' jurisdiction by agreeing that the jurisdictional amount requirement has been satisfied. The court's obligation to determine the presence of the appropriate amount in controversy is independent of the parties' stipulations." Huffman v. Saul Holdings Ltd. Partnership, 194 F.3d 1072, 1079 n.4 (10th Cir.1999).*

> [W]here the other elements of jurisdiction are present and at least one named plaintiff in the action satisfies the amount-in-controversy requirement, § 1367 does authorize supplemental jurisdiction over the claims of other plaintiffs in the same Article III case or controversy, even if those claims are for less than the jurisdictional amount specified in the statute setting forth the requirements for diversity jurisdiction.

In a case originally brought in federal court, the plaintiff's claimed amount of damages is presumed to satisfy the jurisdictional sum. Martin, 251 F.3d at 1289. If the defendant or the court on its own motion challenges federal subject matter jurisdiction on the basis of the amount in controversy requirement, the plaintiff then "must show that it does not appear to a legal certainty that [he] cannot recover at least $[75],000." Watson v. Blankinship, 20 F.3d 383, 386 (10th Cir. 1994); Burrell v. Burrell, 229 F.3d 1162, 2000 WL 1113702 at *1 (10th Cir. Aug. 7, 2000).[4] As the legal certainty standard is quite strict, "it is difficult for a dismissal to be premised on the basis that the requisite jurisdictional amount is not satisfied." Woodmen of the World Life Ins. Society v. Manganaro, 342 F.3d 1213, 1216 (10th Cir. 2003). "Generally, dismissal under the legal certainty standard will be warranted only when a contract limits the possible recovery, when the law limits the amount recoverable, or when there is an obvious abuse of federal court jurisdiction." *Id.* at 1217 (citing 14B Wright, Miller & Cooper, Federal Practice & Procedure: Jurisdiction 3d § 3702, at 98-101 (1998)).

A plaintiff can meet his burden of establishing jurisdiction by alleging the factual

---

[4]*Burrell and the other unpublished decisions referenced in this order are cited for persuasive value only under 10th Cir. R. 36.3(B).*

3

basis for jurisdiction with sufficient particularity and supporting the allegation. *See* St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 288 n.10 (1938); Burrell, 229 F.3d 1162, 2000 WL 1113702 at *1. While the allegations in the complaint alone can support a damages claim, sufficient facts must be alleged to persuade the court that "recoverable damages will bear a reasonable relation to the minimum jurisdictional floor." Gibson v. Jeffers, 478 F.2d 216, 221 (10th Cir.1973). The applicable test is based on good faith pleading: The jurisdictional sum can "only be in controversy if asserted by [plaintiff] in good faith, as jurisdiction cannot be conferred or established by colorable or feigned allegations solely for such purpose. If the amount becomes an issue ... the trial court must make a determination of the facts." Emland Builders, Inc. v. Shea, 359 F.2d 927, 929 (10th Cir.1966).

If the action has been removed to federal court "'[t]he defendant's claim that the amount in controversy exceeds $50,000 does not enjoy the St. Paul Mercury presumption of accuracy that the plaintiff's does.'" Martin, 251 F.3d at 1289 (quoting Singer v. State Farm Mut. Auto. Ins. Co., 116 F.3d 373, 376 (9th Cir. 1997)).

> Defendant's right to remove and plaintiff's right to choose his forum are not on equal footing; for example, unlike the rules applied when a plaintiff has filed suit in federal court with a claim that, on its face, satisfies the jurisdictional amount, removal statutes are construed narrowly; where plaintiff and defendant clash about jurisdiction, uncertainties are resolved in favor of remand.

*Id.* at 1289-90 (quoting Burns v. Windsor Ins. Co., 31 F.3d 1092, 1095 (11th Cir.1994)). When the plaintiffs' damages are unspecified, the defendant must, at a minimum, establish

the jurisdictional amount by a preponderance of the evidence. Martin, 251 F.3d at 1290.[5] If the damages claimed by the plaintiff exceeds the jurisdictional amount the burden, as a practical matter is, however, "'rather light.'" Huffman v. Saul Holdings Ltd. Partnership, 194 F.3d 1072, 1079 (10th Cir.1999).

The plaintiffs' assertion that the amount in controversy exceeds the sum of $75,000 is "based in large measure on the respective Plaintiffs' claims for declaratory and/or injunctive relief, which are likely to cost GM much more than $75,000. In summary, each of the Plaintiffs seeks (a) a declaration that GM negligently designed and/or manufactured the subject engines that suffer from the piston slap defect, and/or (b) an injunction prohibiting FM from continuing the sale of the defective engines." Plaintiffs' Joint Memorandum Supporting Subject Matter Jurisdiction, p. 3. As corroboration for their assertion regarding the amount in controversy, the plaintiffs refer to the sworn statement of GM's product manager, John Ellison, who has declared that the cost to GM to redesign, test, validate and produce even one of the 7 engines that the plaintiffs claim are defective would vastly exceed the sum of $75,000.[6]

---

[5]*The court noted in Martin that the Tenth Circuit has not expressly adopted the preponderance of the evidence standard when determining whether removal jurisdiction based on diversity exists. Martin, 251 F.3d at 1290.*

[6]*In support of their argument that a judicial declaration that the engines were defectively designed or manufactured would cost GM more than $75,00 in lost sales, business reputation and good will, the plaintiffs cite Indian Territory Oil & Gas Co. v. Indian Territory Illuminating Oil Co., 93 F.2d 711 (10th Cir. 1938), a trademark infringement action. The case is inapposite. The oil company filed the suit to restrain the defendant from using its corporate name. The Tenth Circuit stated that "[t]he test, in determining the amount in controversy <u>in a case of this kind presenting a continuing wrong to an established business growing out of unfair trade practices</u>, is not the*

GM makes a similar argument in its brief, claiming that subject matter jurisdiction exists because the plaintiffs seek a declaration that GM's engines were negligently designed and/or manufactured, seek an injunction enjoining GM from continuing to sell vehicles containing these engines[7] and seek to require GM to repair or replace the class engines with "new" engines that do not have the alleged "piston slap." Alternatively, GM asserts, the court now has jurisdiction under the newly enacted Class Action Fairness Act ("CAFA").

The defendant's reliance on CAFA, however, is misplaced. Pritchett v. Office Depot, Inc., 404 F.3d 1232 (10th Cir. 2005). The defendants in Pritchett had removed a class action that had been commenced in state court prior to the Act's effective date. The district court remanded it and the Tenth Circuit affirmed, holding that CAFA does not apply to state cases that were pending or commenced before it went into effect. Iscar, Ltd. v. Katz, 743 F.Supp. 339 (D.N.J. 1990), cited by GM, is distinguishable. The court and parties discovered in Katz, after the case had been pending for over three years, when discovery had been completed and a trial was imminent, that the parties lacked diversity when the case was filed but had become diverse under a subsequent amendment to § 1332. The court declined to dismiss the action, citing decisions that relied on principles of judicial economy and efficiency to sustain

---

*immediate pecuniary damages arising from the wrongful acts. It is the value of the business or the right to be protected; and business reputation or good will is an intangible asset to be taken into consideration in ascertaining the extent and value of the business or right." Id. at 713 (emphasis added).*

[7]*In a second affidavit John Ellison declares that even though GM no longer manufactures the 1999-2003 model year vehicles that are the subject of this litigation, it does still sell them occasionally and the cost to GM, if enjoined from making those sales, would exceed the sum of $75,000. Defendant's supplemental brief on jurisdiction, Exhibit A.*

judgments in cases in which complete diversity existed at the time of judgment or trial, even though it was lacking at the moment the case was filed or removed. If the MDL litigation was in a similar posture, Katz might be persuasive. These cases have not, however, progressed far enough that considerations of judicial economy and efficiency are compelling, even assuming Katz is otherwise doctrinally sound.

At the hearing on the jurisdictional issue, the parties essentially agreed that they were principally relying on the requested injunctive relief to reach the jurisdictional hurdle.[8] When the plaintiff seeks declaratory or injunctive relief, "it is well established that the amount in controversy is measured by the value of the object of the litigation." Hunt v. Wash. State Apple Adver. Comm'n, 432 U.S. 333, 347 (1977); Mid-America AG Network, Inc. v. Monkey Island Dev. Auth., 2004 WL 1529284, at *2 (10th Cir. July 8, 2004). That "value" consists of the "pecuniary effect an adverse declaration will have on either party to the lawsuit," City of Moore v. Atchison, Topeka, & Santa Fe Ry. Co., 699 F.2d 507, 509 (10th Cir. 1983), as demonstrated by Oklahoma Retail Grocers Assoc. v. Wal-Mart Stores, Inc., 605 F.2d 1155 (10th Cir. 1979). The plaintiff in the latter case, an association of 1237 retail

---

[8]*Counsel acknowledged that their damages claims alone probably would not amount to $75,000. While a few of the complaints seek punitive damages, which may be considered in determining whether the jurisdictional requirement of $75,000 is satisfied, punitive damages ordinarily may not be "aggregated and attributed in total to each member of a putative class for purposes of satisfying diversity jurisdiction." Martin, 251 F.3d at 1292-93. Attorney's fees similarly may be considered in determining whether claims satisfy the amount in controversy, but potential fees requested on behalf of a class may not be aggregated and attributed entirely to the class representatives or each plaintiff in a class action when assessing whether diversity jurisdiction exists. Id. at 1293.*

grocers, sued Wal-Mart in state court under the Oklahoma Unfair Sales Act, claiming the defendant was selling merchandise at below cost and seeking injunctive relief as authorized by the state statute. After the action was removed to federal court the association unsuccessfully sought its remand on the ground the plaintiff's claim did not satisfy the jurisdictional amount requirement. The trial court concluded that jurisdiction existed because the cost to Wal-Mart of complying with the state regulatory scheme would exceed $10,000.[9] The appellate court affirmed that decision, finding that "[t]he trial court was correct in recognizing that in this, an injunction case, the impact on the defendant, including the cost of the injunction is a proper element for consideration." *Id.* at 1160.

Similarly, in Justice v. Atchison, Topeka and Santa Fe Ry. Co., 927 F.2d 503 (10th Cir. 1991) the Tenth Circuit held that the cost of injunctive relief to the defendant satisfied the jurisdictional amount requirement. The Justice plaintiffs, a large group of land and business owners, had sued the railway company contending that its structures had caused their property to flood. In addition to monetary relief they sought an injunction compelling the defendant to alter its structures, claiming the railroad, as presently constructed, was a continuing nuisance. The plaintiffs' motion to remand was denied by the district court. On appeal the plaintiffs argued that even if the total cost of the injunctive relief to the defendant would exceed the jurisdictional minimum, Lonnquist v. J. C. Penney Co., 421 F.2d 597 (10th Cir. 1970) required a finding that their claims could be aggregated before the total

---

[9]*The jurisdictional minimum at that time was $10,000.*

detriment to the defendant could be considered. Aggregation was not possible, the plaintiffs argued, because under Snyder v. Harris, 394 U.S. 332 (1969) and Zahn v. Int'l Paper Co., 414 U.S. 291 (1973) each plaintiff's claims were separate and distinct from the claims of the other plaintiffs.

The Tenth Circuit disagreed, holding that because the plaintiffs' damages and injunction claims were "separate and independent," and because the value to the defendant of complying with the requested injunction – the cost of repairing the structures – satisfied the jurisdictional amount, the injunction claim was removable to federal court. Under 28 U.S.C. § 1441(c) the trial court then had the discretion to retain or remand the non-removable, damages claim. In determining whether the jurisdictional amount was met, the defendant's total cost of repairing the structures apparently was considered; the cost per plaintiff was not computed.[10]

Other class action cases in which requested injunctive relief has satisfied the jurisdictional amount include Bridgestone, 256 F.Supp.2d at 884; Earnest v. General Motors Corp., 923 F.Supp. 1469 (N.D. Ala. 1996) and Edge v. Blockbuster Video, Inc., 10

---

[10]*To the extent Justice requires a separate claim for injunctive relief, the consumer protection statutes alleged in the Skinner, Brown, Reagan, Gouthro, Van Tassel and Haehn cases all expressly authorize injunctive relief and the pertinent statute in Massari allows the court in its discretion to "provide such additional relief as it deems necessary or proper."  73 Pa.Cons.Stat.Ann. § 201-9.2.  See Cal. Bus. and Prof. Code §17203; Fla.Stat.Ann. § 501.211; N.Y. Gen. Bus. Law § 349; Mass. Gen. Law ch. 93A, § 9; Mo.Rev.Stat. § 407.025.1; Kan.Stat.Ann. § 50-634.  As for the remaining cases, although the parties are not relying on the plaintiffs' damages claims to establish the jurisdictional amount, they potentially suffice in Smith (fraud and punitive damages claims in original petition/complaint); Largent (treble actual and mental distress damages); and Powell (punitive damages).*

F.Supp.2d 1248 (N.D. Ala. 1997). The court in <u>Bridgestone</u> had to decide whether jurisdiction existed over removed cases consolidated in an MDL proceeding. The plaintiffs in the various actions sought compensatory damages, declaratory relief and different types of injunctive relief.[11] The court focused its inquiry on the cost to the defendant if it were prohibited from manufacturing, distributing, advertising and marketing its tires as presently manufactured and designed. The monetary impact, the court determined, would essentially be the same whether the injunction ran in favor of one of the named plaintiffs or the entire class of purchasers he sought to represent.[12] As that cost appeared to a reasonable certainty to far exceed $75,000, the court concluded jurisdiction existed.[13] *Id.* at 895-96.

The plaintiffs in <u>Earnest</u> claimed the defendants designed and installed defective engines and/or engine control modules in various GM automobile models and asserted claims

---

[11]*The money damages claimed fell far short of the $75,000 requirement, as the compensatory damages for each plaintiff amounted to less than $1000. The district court also was skeptical that the jurisdictional minimum could be met if the bulk of the amount in controversy depended on the plaintiffs' requests for punitive damages and attorney's fees.*

[12]*Some of the <u>Bridgestone</u> plaintiffs had also sought injunctive relief mandating recall/replacement of the tires, the creation or resurrection of warranty rights, establishment of a constructive trust and payment of restitution. Those claims were rejected as a basis for jurisdiction because that type of injunctive relief, the <u>Bridgestone</u> court concluded, was "apportionable among the individual plaintiffs because the cost to the defendants of these measures would depend on the number of claimants as to whom the relief was awarded. Put another way, the cost will incrementally increase based on the number of purchasers covered by the award." Id. at 895.*

[13]*Jurisdiction was also found to exist with respect to another case in the same MDL proceeding where, in addition to requesting an injunction prohibiting the marketing and sale of the tires, the plaintiff sought "a public information campaign to correct defendants' allegedly improper conduct and dissemination of false and misleading information" and a "'suspension of defendants' right and ability to conduct business in California' for an unspecified period." <u>Bridgestone</u>, 256 F.Supp.2d at 896.*

including failure to warn of defects, breach of warranty, negligence, fraud, and conspiracy. In addition to seeking compensatory and punitive damages, the plaintiffs requested "comprehensive injunctive and declaratory relief, including, *inter alia,* a required advertising campaign to notify putative class members of the alleged defect, a recall of all affected vehicles, and an injunction prohibiting the use of the allegedly defective engines and/or engine control modules." Earnest, 923 F.Supp. at 1471. They also sought to have the court direct the defendant to replace, at its cost, the engines/engine control modules. The defendants removed the action and the district court, when addressing a motion to remand for lack of jurisdiction, concluded that the equitable relief would benefit the putative class as a whole and not just an individual plaintiff. It was enough, the court found, if the collective interest of the class equaled the jurisdictional amount. Because the cost to the defendants of complying with the equitable relief would exceed the jurisdictional minimum, the court concluded the amount in controversy requirement of § 1332 was satisfied.

In Edge the court determined that the value of the injunction – which would prohibit the defendant from charging excessive late fees and would result in an annual loss of revenue in excess of $65,000,000 – should be aggregated as the effect of the requested injunction would be to deter the course of conduct as a whole and inure to the "'public benefit – the collective good.'" Edge, 10 F.Supp.2d at 1254. *See also* Uhl v. Thoroughbred Tech. and Telecomm., Inc., 309 F.3d 978 (7th Cir. 2002). *See generally* Lonnquist, 421 F.2d at 599 (court acknowledged that some claims may be aggregated and the total detriment to the

defendant considered).[14]

Here, the application of these principles presents a close question. It appears certain that the monetary damages to which any successful plaintiff may be entitled will not reach, and perhaps not even approach, the necessary threshold. The addition of any plaintiff's proportionate share of any punitive damages or attorney's fee award appears unlikely to result in potential relief in excess of $75,000. The request for declaratory relief is largely meaningless.[15]

The parties have demonstrated that the cost to GM of complying with an injunction mandating an engine redesign effort or halting GM's sales of the defective engines would exceed the jurisdictional minimum.[16] *See* Declarations of John Ellison, Exhibits to General Motor Corporation's briefs on subject matter jurisdiction. However, the prospect of a court awarding injunctive relief of such a type as would qualify for non-apportionment under the principles noted above, (i.e. an order requiring the redesign of an engine type or an order banning all sales by GM of cars with the subject motors), appears remote.[17] Nonetheless,

---

[14]*In Lonnquist, unlike here, the cost of injunctive relief was dependent on the number of plaintiffs, as the Lonnquist plaintiffs sought to enjoin the defendant department stores from charging them excess interest on their respective store charge accounts.*

[15]*If a party could be deemed to meet the amount in controversy requirement based on the collateral, public relations damage to a defendant from an adverse declaration, the dollar threshold for federal jurisdiction in diversity cases would be rendered meaningless in many cases. Kanter v. Warner-Lambert Co., 265 F.3d 853 (9th Cir. 2001).*

[16]*GM, having removed the Smith action, bears the burden of establishing jurisdiction in that case, while the plaintiffs must demonstrate the existence of jurisdiction in the remaining lawsuits.*

[17]*Absent some showing of a threat to consumer safety from the alleged defect, which all parties concede is not present here, or some basis for establishing the inadequacy of legal relief, it seems highly unlikely that any court would actually order these sorts of injunctive relief. Neither party could point to any case awarding such relief in a comparable situation. However, while a*

12

under the applicable deferential standard, the court cannot say to a legal certainty that such relief is not available.

Accordingly, the court concludes it has subject matter jurisdiction over the MDL cases and will proceed to consider the pending motions to dismiss and motions for class certification.

**IT IS SO ORDERED**.

Dated this 6th day of July, 2005.

_____
JOE HEATON
UNITED STATES DISTRICT JUDGE

---

*close question, the court cannot say the pursuit of such relief is so baseless as to lack good faith or constitute an abuse of federal jurisdiction. See* Miller v. General Motors Corp., *2002 WL 31375526 (N.D. Ill. Oct. 18, 2002) (jurisdictional amount satisfied by plaintiff's claim for an injunction compelling defendant to establish a program repairing all delaminating vehicles, even though it was possible that one or a few plaintiffs "might not succeed in getting a court to enter such broad relief").*

13