**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| In re:  General Motors Corporation, | ) | Case No.  MDL 04-1600 |
| "Piston Slap" Products Liability Litigation, | ) | Judge Joe Heaton |
| | ) | |
| | ) | |

**This document relates to:**
*Smith v. General Motors Corporation,* **Case No. CIV-03-1546**

### ORDER

Plaintiff Troy Smith, the owner of a 2001 Chevrolet Silverado truck, filed a class action complaint against General Motors Corporation ("GM") premised on an alleged defect in certain car and truck engines it designed and manufactured.[1] In addition to claiming the defendant breached express and implied warranties and was unjustly enriched, and seeking injunctive and declaratory relief, the plaintiff alleges GM violated Oklahoma's Consumer Protection Act ("OCPA") and Deceptive Trade Practices Act ("DTPA").  GM has moved to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(6) and 9(b), contending it fails to state a claim and does not allege fraud with the required particularity.[2]

When considering a 12(b)(6) motion, all well-pleaded factual allegations in the complaint are accepted as true and those allegations, and any reasonable inferences that might be drawn from them, are construed in the light most favorable to the nonmoving party.

---

[1]*The plaintiff filed the complaint on behalf of himself and all others who purchased from a GM authorized dealer within the State of Oklahoma any new 1999-2003 model year GM car or truck with a 3.1,3.4,4.8,5.3,5.7(LS1), 6.0 or 8.1 liter engine.*

[2]*Although it pertains primarily to a different plaintiff, the court has not considered the extraneous information (plaintiff Massari's interrogatory answers) GM refers to in its reply brief.*

*See* Clark v. State Farm Mut. Auto. Ins. Co., 319 F.3d 1234, 1240 (10th Cir. 2003). Dismissal is appropriate "'only when it appears that the plaintiff can prove no set of facts in support of the claims that would entitle the plaintiff to relief.'" *Id.* (quoting McDonald v. Kinder-Morgan, Inc., 287 F.3d 992, 997 (10th Cir. 2002). Reviewing the complaint under that lenient standard, the court concludes the defendant's motion should be granted in part and denied in part. The rationale for the court's decision follows a brief summary of the plaintiff's allegations.

In his complaint, the plaintiff asserts that certain engines, including the engine in his GM pickup, that the defendant designed and manufactured for its 1999-2003 model year cars and trucks had a defect, referred to as piston slap, that resulted from excessive clearance between the pistons and the sides of the cylinder walls or bores. Piston slap, he alleges, causes a loud knocking noise, damages the engine, wastes fuel and oil, causes significantly higher vehicle emissions, reduces the vehicle's power and performance, and lowers the vehicle's resale value. However, while the plaintiff's truck and the others in those model years were covered by GM's new vehicle limited warranty, the plaintiff claims he was unable to have the defect corrected, being told by two different Chevrolet dealers that it was normal engine noise. The plaintiff contends that several Technical Service Bulletins GM issued in 2001 and 2003 not only demonstrate that GM was aware of the piston slap problem, but reveal the defendant's attempt to avoid liability and conceal the negligent design or manufacturing defect.

As a result of his complaints to GM customer service and negotiations conducted on

his behalf by the Better Business Bureau Autoline, the plaintiff eventually received a 6 year/100,000 mile extended warranty on the engine and engine parts, but was informed when he took it to the dealer to have the piston slap repaired, that the noise was normal and not a covered warranty repair. The plaintiff then refused the extended warranty and filed this action.

Citing "no-injury" product defect cases, the defendant initially contends the plaintiff cannot maintain an action under any of his legal theories for a defect that has not caused a compensable injury. This argument fails, however, as GM ignores the plaintiff's allegations, liberally construed, that the "defect had actually manifested itself in [his] vehicle[]," Briehl v. General Motors Corp., 172 F.3d 623, 627 (8th Cir. 1999), and his allegations of injury, particularly his claim that piston slap harms the engine.³ The assertions of actual, present damage distinguish this case from those GM relies on, in which the plaintiffs "concede[d] they were not among the injured," Rivera v. Wyeth -Ayerst Labs., 283 F.3d 315, 320 (5th Cir. 2002) or were essentially seeking to recover for a "potentially life-threatening defect." Lee v. General Motors Corp., 950 F.Supp. 170, 172 (S.D.Miss. 1996).⁴

It is true the amended complaint does not clearly and explicitly allege that the plaintiff's engine suffered from excessive piston-to-bore clearance or that his engine was

---

³*Contrary to GM's assertion, the plaintiff did plead that the noise in his engine is "piston slap." See First Amended Class Action Complaint, ¶44 ("Frustrated with his inability to have the Piston Slap defect repaired, Smith began to complain to GM customer service.")*

⁴*At this procedural stage, the issue is whether the plaintiff has pleaded damages, not whether he can prove he actually sustained a cognizable loss.*

damaged, used excessive oil or had sustained any of the other specific consequences alleged to stem from the "piston slap" defect. However, under the liberal pleading standard of Fed.R.Civ.P. 8(a), the court broadly interprets the plaintiff's complaint as making such allegations. In reaching that conclusion a further word about the terminology the plaintiff employs is warranted. The plaintiff has used the term "piston slap" in various ways, depending on the context. At times, the plaintiff is careful to identify the alleged underlying defect as excessive piston-to-bore clearance. He terms this defect "piston slap." At other times the plaintiff refers to "piston slap" as the noise resulting from the defect, a subtle but potentially important shift. As the defendant correctly notes, noise by itself is not a "defect" within the meaning of warranty claims, both contractual and pursuant to the Uniform Commercial Code or Magnuson-Moss Warranty Act, or under many states' consumer laws. *E.g.*, Hasek v. DaimlerChrysler Corp., 745 N.E.2d 627 (Ill.App.Ct. 2001); Miller v. DaimlerChrylser Motors Corp., 2001 WL 587496 (Ohio Ct.App. 2001).

    To establish an actionable defect, the plaintiff must allege and ultimately prove not just that his vehicle was noisy, or that it generated what the plaintiff views as excessive noise, but that the vehicle in fact suffered from the underlying defect alleged – that the excessive piston-to-bore clearance resulted in engine damage, increased oil consumption and the like. For present purposes the question is whether the plaintiff has sufficiently pleaded the requisite defect. The court concludes he has. Dismissal of the complaint is not, therefore, warranted on the ground that the plaintiff has failed to allege a product defect or injury.

Breach of Warranty

GM contends the plaintiff's express warranty claim is deficient for lack of allegations that it has refused to repair any defect, other than noise. His implied warranty claim is undermined, GM argues, by his failure to allege that his vehicle is unfit for transportation. Neither argument is persuasive; the plaintiff has alleged facts sufficient to support both warranty claims.

Oklahoma Consumer Protection Act

GM contends that the Oklahoma Consumer Protection Act, 15 Okla. Stat. §§ 751-764.1 is inapplicable because its regulation, as an automotive manufacturer, by the Oklahoma Motor Vehicle Commission exempts it from coverage under the consumer act, pursuant to 15 Okla. Stat. § 754(2). That statute provides that the OCPA shall not apply to:

> Actions or transactions regulated under laws administered by the Corporation Commission or any other regulatory body or officer acting under statutory authority of this state or the United States, or to acts done by retailers or other persons acting in good faith on the basis of information or matter supplied by others and without knowledge of the deceptive character of such information or matter.

As the Oklahoma Supreme Court has not addressed this issue, this court must predict how that court would resolve it. The task is simplified by the statutory language which requires, for the exemption to apply, that the regulatory body regulate the particular activity at issue: "[a]ctions or transactions regulated...." *Id.*

The Oklahoma Motor Vehicle Commission was created principally for the task of protecting motor vehicle dealers by the licensing of manufacturers, distributors and dealers,

not otherwise controlling them. *See* Whiteis v. Yamaha Int'l Corp., 531 F.2d 968, 970-73 (10th Cir. 1976) (Oklahoma act regulating motor vehicle manufacturers and distributors "pertain[s] primarily to grounds for suspension or revocation of licenses by the Oklahoma Motor Vehicle Commission."). As there is no indication the regulatory activities of the Oklahoma Motor Vehicle Commission extend to the circumstances involved here, essentially the regulation of allegedly defective products, the exemption to the Oklahoma Consumer Protection Act does not apply to exempt the defendant from suit under the Act.

As an additional ground for dismissal of the plaintiff's OCPA claim, GM argues that it is subject to the particularity requirement of Fed.R.Civ.P. 9(b) and the plaintiff's allegations are insufficient to meet the heightened pleading requirement. It is unnecessary for the court to decide whether Rule 9(b) applies to the OCPA, as the plaintiff has failed to plead a violation of the Act.[5] The mere recitation of the statutory language without specification of the alleged unfair trade practices is insufficient to satisfy the notice pleading standard of Fed.R.Civ.P. 8.[6] The plaintiff's OCPA claim will be dismissed, but he is granted

---

[5]*As noted by GM in its reply brief and evidenced by the technical service bulletins, themselves, the bulletins were not issued to consumers. The bulletins also reflected the defendant's position that the noise, while a "customer annoyance issue," did "not affect the durability or life of the engine." First Amended Class Action Complaint, ¶28.*

[6]*The Oklahoma legislature's concern about the OCPA's potential for abuse is reflected in § 761.1 of the Act, which directs the court to award the prevailing party costs, including attorney's fees, in an amount not to exceed $10,000, if, subsequent to adjudication on the merits, the court finds that "a claim or defense asserted in the action by a nonprevailing party was asserted in bad faith, was not well grounded in fact, or was unwarranted by existing law or a good faith argument for the extension, modification, or reversal of existing law." 15 Okla. Stat. § 761.1(A).*

ten days to amend his complaint to state a claim under the statute, if that can be accomplished.[7]

Oklahoma Deceptive Trade Practices Act

Citing Conatzer v. American Mercury Ins. Co., Inc., 15 P.3d 1252 (Okla. Ct. App. 2000),[8] the defendant asserts that the plaintiff's claim under the Oklahoma Deceptive Trade Practices Act, 78 Okla. Stat. § 51-55, fails because the Act only provides a remedy for wronged business competitors, not consumers.[9] The plaintiff responds that he can assert a claim under the DTPA, as it protects "[a]ny person" who has been or is likely to be damaged by a deceptive trade practice. However, his argument ignores § 53 of the DPTA, which

---

[7]*Although the OCPA provides that a "deceptive trade practice" "may occur before, during or after a consumer transaction is entered into and may be written or oral," 15 Okla. Stat. § 752(13), as noted by the defendant in its reply brief, p. 9, the plaintiff must identify how the alleged deception affected his conduct or injured him.*

[8]*Decisions of Oklahoma's intermediate appellate courts are not accorded precedential value, but they are "considered to have persuasive effect." (Okla. Stat. tit. 12, ch. 15, app. 1, Okla.S.Ct. Rule 1.200(c)(2)).*

[9]*In reaching its decision, the court in Conatzer relied on Bell v. Davidson, 597 P.2d 753 (Okla. 1979). While the Oklahoma Supreme Court stated in Bell that the defendants in that case had to be in competition with the plaintiff to succeed on their ODTPA claim, Bell, as subsequently interpreted by the Tenth Circuit, requires a showing that the defendants are competitors of the plaintiff, "as a prerequisite to enjoining the use of a plaintiff's trademark." VIP Foods, Inc. v. Vulcan Pet, Inc., 675 F.2d 1106, 1108 (10th Cir. 1982). It is arguable whether Bell's holding is limited to claims asserted under the ODTPA involving trademark infringement. However, the overlap between the ODTPA and the OCPA and the specific provision in the OCPA granting an aggrieved consumer a "private right of action for damages," 15 Okla. Stat. § 761.1(A), support the Conatzer court's view that the ODTPA "protect[s] competing business interests and do[es] not present a basis for suit by consumers." Conatzer,15 P.3d at 1254.*

defines deceptive trade practices.[10]  It is evident from the conduct that section of the Act proscribes, that the DPTA regulates anticompetitive conduct; it does not create a right of action for a consumer.  Therefore, the defendant's motion will be granted as to this claim.

<u>Unjust Enrichment</u>

Dismissal of the plaintiff's unjust enrichment claim is necessary, GM asserts, because "Oklahoma does not allow a plaintiff to prevail on an unjust enrichment claim where there is an adequate remedy at law."  While the defendant is correct that the plaintiff may not "prevail" on his unjust enrichment claim if he has an adequate legal remedy, he still may plead an equitable claim.  Fed.R.Civ.P. 8(e)(2) permits a party to "state as many separate claims or defenses as the party has regardless of consistency and whether based on legal, equitable, or maritime grounds."  *See* <u>N.C. Corff Partnership, Ltd. v. OXY USA, Inc.</u>, 929 P.2d 288, 295 (Okla. Ct.App. 1996) (noting "Oklahoma procedure clearly permits pleading alternative remedies, just as it allows alternative theories of recovery, as long as plaintiffs are not given double recovery for the same injury," court held availability of tort claim with established measure of damages did not preclude plaintiff's assertion of alternative claim for unjust enrichment).  The plaintiff's unjust enrichment claim is not subject to dismissal at this procedural juncture.

Accordingly, the defendant's motion is **GRANTED** with respect to the plaintiff's Oklahoma's Consumer Protection Act and Deceptive Trade Practices Act claims and

---

[10]*Section 53 is titled "Acts constituting deceptive trade practices – Prima facie evidence of intent to injure competitors."*

**DENIED** with respect to the plaintiff's warranty and unjust enrichment claims. The plaintiff is granted **ten (10) days** within which, if he so chooses, to amend his OCPA claim.

**IT IS SO ORDERED**.

Dated this 8th day of August, 2005.

_____
JOE HEATON
UNITED STATES DISTRICT JUDGE