**IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| In re: General Motors Corporation, "Piston Slap" Products Liability Litigation, | ) | Case No. MDL 04-1600 |
| | ) | Judge Joe Heaton |
| | ) | |
| Judge Joe Heaton | ) | |
| | ) | |

**This document relates to:**
***Boyd v. General Motors Corporation*, Cause No. 03-74595;**

## ORDER

Plaintiffs Brian Boyd, Raymond Darbro, Kim C. Powell and Daniel Powell, the owners of General Motors vehicles containing 3.1, 3.4, 4.8, 5.3, 5.7(LS1), 6.0 or 8.1 liter engines that were purchased after 1998, filed a class action complaint against General Motors Corporation ("GM") premised on an alleged design and manufacturing defect in the specified engines.[1] In addition to claiming the defendant was negligent[2] and breached express and implied warranties, the plaintiffs seek injunctive relief. GM has moved to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(6), contending it fails to state a claim upon which relief can be granted.[3]

When considering a 12(b)(6) motion, all well-pleaded factual allegations in the

[1]*The plaintiffs filed the complaint on behalf of themselves and all others who purchased from a GM authorized dealer within the United States any new 1999 or later model year GM car or truck with a 3.1, 3.4, 4.8, 5.3, 5.7(LS1), 6.0 or 8.1 liter engine.*

[2]*The plaintiffs allege the engines were negligently designed and manufactured and also rely on the doctrine of res ipsa loquitur to support their negligence claims.*

[3]*Although it pertains primarily to a different plaintiff, the court has not considered the extraneous information (plaintiff Massari's interrogatory answers) GM refers to in its reply brief.*

complaint are accepted as true and those allegations, and any reasonable inferences that might be drawn from them, are construed in the light most favorable to the nonmoving party. *See* Clark v. State Farm Mut. Auto. Ins. Co., 319 F.3d 1234, 1240 (10th Cir. 2003). Dismissal is appropriate "'only when it appears that the plaintiff can prove no set of facts in support of the claims that would entitle the plaintiff to relief.'" *Id.* (quoting McDonald v. Kinder-Morgan, Inc., 287 F.3d 992, 997 (10th Cir. 2002). Reviewing the complaint under that lenient standard, the court concludes the defendant's motion should be granted in part and denied in part. The rationale for the court's decision follows a brief summary of the plaintiffs' allegations.

In their second amended class action complaint, the plaintiffs assert that they purchased high-end GM vehicles that contain defectively designed and/or manufactured engines. The plaintiffs claim the alleged defect, referred to as piston slap, is found in certain engines that the defendant designed and manufactured for its 1999 and later model year cars and trucks and results from excessive clearance between the pistons and cylinder bores. Piston slap, they aver, causes a loud knocking noise, damages the engine pistons and cylinders, causes decreased mileage, carbon buildup on piston heads and excessive smoke emissions and oil consumption, and lowers the vehicle's resale value. The plaintiffs contend that, while GM was aware of the problem, the company decided to modify its definition of normal engine noise and increase the vehicles' accepted oil consumption rate rather than fix it. Loss of the vehicles' use and substantial loss in the vehicles' values and resale values are among the damages claimed for the allegedly defective engines.

Citing "no-injury" product defect cases, the defendant initially contends the plaintiffs cannot maintain an action under any of their legal theories for a defect that has not caused them a compensable injury. This argument fails, however, as GM ignores the plaintiffs' allegations, liberally construed, that the "defect had actually manifested itself in [their] vehicle[s]," Briehl v. General Motors Corp., 172 F.3d 623, 627 (8th Cir. 1999), and their allegations of injury, particularly their claim that piston slap damages the engine. The assertions of actual, present damage distinguish this case from those GM relies on, in which the plaintiffs "concede[d] they were not among the injured," Rivera v. Wyeth -Ayerst Labs., 283 F.3d 315, 320 (5th Cir. 2002) or were essentially seeking to recover for a "potentially life-threatening defect." Lee v. General Motors Corp., 950 F.Supp. 170, 172 (S.D.Miss. 1996).[4] It is true the amended complaint does not clearly and explicitly allege that the plaintiffs' engines suffered from excessive piston-to-bore clearance or that their engines were damaged, used excessive oil or had sustained any of the other specific consequences alleged to stem from the "piston slap" defect. However, under the liberal pleading standard of Fed.R.Civ.P. 8(a), the court broadly interprets the plaintiffs' complaint as making such allegations. In reaching that conclusion a further word about the terminology the plaintiffs employ is warranted. The plaintiffs have used the term "piston slap" in various ways, depending on the context. At times, the plaintiffs are careful to identify the alleged underlying defect as excessive piston-to-bore clearance. They term this defect "piston slap."

---

[4] *At this procedural stage, the issue is whether the plaintiffs have pleaded damages, not whether they can prove they actually sustained cognizable losses.*

At other times the plaintiffs refer to "piston slap" as the noise resulting from the defect, a subtle but potentially important shift. As the defendant correctly notes, noise by itself is not a "defect" within the meaning of warranty claims, both contractual and pursuant to the Uniform Commercial Code or Magnuson-Moss Warranty Act, or under many states' consumer laws. *E.g.*, Hasek v. DaimlerChrysler Corp., 745 N.E.2d 627 (Ill.App.Ct. 2001); Miller v. DaimlerChrylser Motors Corp., 2001 WL 587496 (Ohio Ct.App. 2001).

To establish an actionable defect, the plaintiffs must allege and ultimately prove not just that their vehicles were noisy, or that they generated what the plaintiffs view as excessive noise, but that the vehicles in fact suffered from the underlying defect alleged – that the excessive piston-to-bore clearance resulted in engine damage, increased oil consumption and the like. For present purposes the question is whether the plaintiffs have sufficiently pleaded the requisite defect. The court concludes they have. Dismissal of the complaint is not, therefore, warranted on the ground that the plaintiffs have failed to allege a product defect or injury.

Breach of Express Warranty

GM contends the plaintiffs' express warranty claim is deficient for lack of allegations that GM made an express representation to them that became part of their sales contracts. It also fails, the defendant asserts, because the plaintiffs have not pleaded that their vehicles have exhibited a defect that it either has refused to repair or indicated an intent not to repair under the warranty if premature failure occurs. The court concludes the plaintiffs have satisfied their minimal pleading burden with their allegations that GM has refused to fix,

adjust or replace their defective engines despite its "bumper to bumper" warranty covering defects in materials and workmanship. *See* Second Amended Class Action Complaint, ¶¶ 15, 34, 38.

Breach of Implied Warranty

GM argues that the plaintiffs' implied warranty claim is undermined by their failure to allege that their engines have failed in any way or are unfit for transportation. The plaintiffs' reliance on the "pass without objection in the trade" attribute of merchantability is misplaced, GM contends, as it applies to commercial, rather than consumer, transactions. Even if the "pass without objection" aspect of merchantability was pertinent, the plaintiffs have not, GM argues, alleged that their vehicles do not conform to the contract description. As the "pass without objection" standard of merchantability has occasionally been applied to consumer transactions, *e.g.*, Bayliner marine Corp. v. Crow, 509 S.E.2d 499, 503 (Va. 1999) (phrase "pass without objection in the trade," as used in Uniform Commercial Code to define implied warranty of merchantability, "concerns whether a significant segment of the buying public would object to buying the goods") (internal quotation omitted),[5] and the plaintiffs have alleged that "[a] significant portion of the car buying public object to purchasing vehicles" with the design and/or manufacturing defects that "cause the Class Engines to exhibit the phenomenon know as 'piston slap,'" Second Amended Class Action

[5]*The court recognizes that while the class plaintiffs' claims may be governed by the laws of states other than Virginia, the Virginia Supreme Court's decision is persuasive due to the uniformity among the various states' enactments of the Uniform Commercial Code.*

Complaint, ¶¶ 50, 51, the court concludes the plaintiffs' implied warranty claim survives GM's motion to dismiss.

Negligence

The absence of any allegations of personal injury or damage to other property bars the plaintiffs' negligence claims, GM contends, because California, Florida and Illinois[6] have adopted the economic loss doctrine.[7] The plaintiffs respond, citing Michigan cases, that the doctrine only applies to a plaintiff who had the opportunity to protect himself from economic losses through contract negotiations. As they were consumers rather than commercial entities, the plaintiffs argue that the doctrine does not apply.[8]

---

[6]*The plaintiffs are citizens of these states.*

[7]*"[T]he economic loss rule allows a plaintiff to recover in strict products liability in tort when a product defect causes damage to 'other property,' that is, property other than the product itself. The law of contractual warranty governs damage to the product itself." Jimenez v. Superior Court,58 P.3d 450,456 (Cal. 2002). In East River Steamship Corp. v. Transamerica Delaval, Inc., 476 U.S. 858 (1986), the Supreme Court applied the economic loss doctrine in the context of federal admiralty law. The plaintiffs in that case, charterers of four supertankers, sued the manufacturer of the ships' turbines in tort, alleging that defectively designed and manufactured turbine components damaged the turbines. The Court held the plaintiffs were barred from recovering for damage the product did to itself, concluding that because each turbine was supplied as an integrated package, "each is properly regarded as a single unit." Id. at 867. The Court observed that when the only injury is to the product itself, the need for a remedy in tort is reduced. In that situation, when "the product has not met the customer's expectations, or, in other words, that the customer has received 'insufficient product value,'" warranty remedies under contract law are best suited to compensate for the loss. Id. at 872. As admiralty law incorporates the concepts of negligence and products liability, the Court's discussion of, and rulings pertaining to, the economic loss doctrine in East River Steamship Corp. have been cited in nonadmiralty cases. E.g. Trans States Airlines v. Pratt & Whitney Canada, Inc., 130 F.3d 290 (7th Cir. 1997).*

[8]*The Michigan Supreme Court held in Neibarger v. Universal Coops., Inc., 486 N.W. 2d 612 (Mich. 1992) that "where a plaintiff seeks to recover for economic loss caused by a defective product purchased for commercial purposes, the exclusive remedy*

At this stage of the proceedings, the law of the named plaintiffs' domiciles – California, Florida and Illinois – governs. The courts in those states have all adopted the economic loss doctrine, which was created by the California Supreme Court in Seely v. White Motor Co., 403 P.2d 145 (Cal. 1965). *See e.g.*; Indem. Ins. Co. of North America v. American Aviation, Inc., 891 So.2d 532, 536 (Fla. 2004) ("The economic loss rule is a judicially created doctrine that sets forth the circumstances under which a tort action is prohibited if the only damages suffered are economic losses.");[9] Jimenez v. Superior Court, 58 P.3d 450, 456 (Cal. 2002)( "[T]he economic loss rule allows a plaintiff to recover in strict products liability in tort when a product defect causes damage to 'other property,' that is, property other than the product itself. The law of contractual warranty governs damage to the product itself."); Trans States Airlines v. Pratt & Whitney Canada, Inc., 682 N.E.2d 45 (Ill 1997) (economic loss defined as "damages for inadequate value, costs of repair and replacement of the defective product, or consequent loss of profits-without any claim of personal injury or damage to *other* property.") (internal citation omitted). These states have not adopted the commercial purchaser/consumer distinction urged by the plaintiffs. *E.g.* Jimenz, 58 P.3d at 450 (homeowners); Morrow v. L.A. Goldschmidt Assocs., Inc., 492 N.E. 2d 181 (Ill. 1986) (townhouse purchasers); Stallings v. Kennedy Elec., Inc., 710 So.2d 195

---

*is provided by the UCC, including its statute of limitations." Id. at 527-58 (emphasis added). The commercial or non-consumer versus consumer distinction urged by the plaintiffs has been rejected by one Michigan appellate court. Sherman v. Sea Ray Boats, Inc., 649 N.W. 2d 783, 788 (Mich. Ct. App. 2002).*

[9]*The Florida Supreme Court adopted the economic loss rule in Florida Power & Light Co. v. Westinghouse Elec. Corp., 519 So.2d 899, 902 (Fla. 1987).*

(Fla. Dist. Ct. App. 1998) (homeowners), *aff'd* Comptech Int'l, Inc. v. Milam Commerce Park, Ltd., 753 S.2d 1219 (Fla. 2000).[10] Therefore, the court concludes the economic loss doctrine precludes the plaintiffs' negligence claims.

Accordingly, the defendant's motion is **DENIED** with respect to the plaintiffs' breach of warranty claims and **GRANTED** with respect to the plaintiffs' negligence claims.

**IT IS SO ORDERED**.

Dated this 8th day of August, 2005.

JOE HEATON
UNITED STATES DISTRICT JUDGE

[10] *The Florida appellate court, but not the state supreme court, addressed the propriety of the trial court's dismissal of the plaintiffs' negligence and negligence per se claims on the basis of the economic loss rule.*