**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| In re:  General Motors Corporation,<br>"Piston Slap" Products Liability Litigation, | )    Case No.  MDL 04-1600<br>)    Judge Joe Heaton<br>)<br>) |

**This document relates to:**
*Gouthro v. General Motors Corporation*, **Cause No. 04CV10292**

## ORDER

Plaintiff Michael Gouthro, the owner of a 2002 Chevrolet Silverado truck, filed a class action complaint against General Motors Corporation ("GM") premised on an alleged defect in certain car and truck engines it designed and manufactured.[1]  In addition to claiming the defendant negligently designed and/or manufactured the vehicle engines and breached express and implied warranties, and seeking declaratory and injunctive relief, the plaintiff alleges GM is liable under the Massachusetts consumer protection act for unfair and deceptive trade practices.[2]  GM has moved to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(6),[3] contending the economic loss doctrine bars the plaintiff's negligence claim, neither declaratory nor injunctive relief are appropriate, and the plaintiff has failed to alleged injury, facts demonstrating a breach of warranty, or a violation of the Massachusetts consumer

---

[1]*The plaintiff filed the complaint on behalf of himself and all others who purchased from a GM authorized dealer within the Commonwealth of Massachusetts any new 1999-2003 model year GM car or truck with a 3.1, 3.4, 4.8, 5.3, 5.7(LS1), 6.0 or 8.1 liter engine.*

[2]*Because jurisdiction is based on diversity of citizenship, the substantive law of Massachusetts is applied.*

[3]*GM filed two motions to dismiss, addressing the plaintiff's negligence claim in the first and the claims added in his Amended Complaint in the second.*

protection act.[4]

When considering a 12(b)(6) motion, all well-pleaded factual allegations in the complaint are accepted as true and those allegations, and any reasonable inferences that might be drawn from them, are construed in the light most favorable to the nonmoving party. *See* Clark v. State Farm Mut. Auto. Ins. Co., 319 F.3d 1234, 1240 (10th Cir. 2003). Dismissal is appropriate "'only when it appears that the plaintiff can prove no set of facts in support of the claims that would entitle the plaintiff to relief.'" *Id.* (quoting McDonald v. Kinder-Morgan, Inc., 287 F.3d 992, 997 (10th Cir. 2002). Reviewing the complaint under that lenient standard, the court concludes the defendant's motion should be granted in part and denied in part. The rationale for the court's decision follows a brief summary of the plaintiff's allegations.

In his complaint, the plaintiff asserts that certain engines, including that in his GM pickup, that the defendant designed and manufactured for its 1999-2003 model year cars and trucks had a defect, referred to as excessive piston slap, that resulted from excessive clearance between the pistons and the sides of the cylinder walls or bores. Excessive piston slap, he alleges, causes a loud knocking noise, damages the engine, wastes fuel and oil, causes significantly higher vehicle emissions, reduces the vehicle's power and performance, and lowers the vehicle's resale value.

---

[4]*Although it pertains primarily to a different plaintiff, the court has not considered the extraneous information (plaintiff Massari's interrogatory answers) GM refers to in its reply brief.*

The plaintiff alleges that in 2003, when his truck engine began to make a loud noise, he took it to an authorized GM mechanic for repairs. He was told the problem with his vehicle was known as "piston slap" and occurred in GM's 1999 through 2002 model year vehicles. When he asked that repairs be made pursuant to GM's warranty, the plaintiff was told that GM would not fix the problem for several reasons, including the expense involved. The mechanic told the plaintiff that customers who complained to GM about the piston slap defect would receive an component letter that offered an extended warranty.

The plaintiff then telephoned GM's customer service to complain about the excessive piston slap defect in his vehicle and, after being told the defendant would "check into" the matter, the plaintiff was offered the component letter. When he again demanded that the defect be repaired under the warranty, a supervisor in the defendant's customer service told plaintiff that the defendant refused to repair the defective engine in his vehicle. The plaintiff contends that several Technical Service Bulletins GM issued in 2001 and 2003 not only evidence GM's knowledge of the excessive piston slap defect, but reveal the defendant's attempt to avoid liability and conceal the negligent design or manufacturing defect.

Citing "no-injury" product defect cases, the defendant initially contends the plaintiff cannot maintain an action under any of his legal theories for a defect that has not caused a compensable injury. This argument fails, however, as GM ignores the plaintiff's allegations, liberally construed, that the "defect had actually manifested itself in [his] vehicle[]," Briehl v. General Motors Corp., 172 F.3d 623, 627 (8th Cir. 1999), and his allegations of injury,

particularly his claim that piston slap harms the engine.[5] The allegations of actual, present damage distinguish this case from those GM relies on, in which the plaintiffs "concede[d] they were not among the injured," Rivera v. Wyeth-Ayerst Labs., 283 F.3d 315, 320 (5th Cir. 2002) or were essentially seeking to recover for a "potentially life-threatening defect." Lee v. General Motors Corp., 950 F.Supp. 170, 172 (S.D.Miss. 1996).[6] Dismissal of the complainti is not, therefore, warranted on the ground that the plaintiff has failed to allege a product defect or injury.

Negligence

The absence of any allegations of personal injury or damage to <u>other</u> property bars the plaintiff's negligence claim, GM contends, because Massachusetts has adopted the economic loss doctrine. The plaintiff responds that he has alleged damages "beyond what the economic loss doctrine prohibits" and asserts, without elaboration, that a recent decision by the Supreme Judicial Court of Massachusetts, Berish v. Bornstein, 770 N.E.2d 961 (Mass. 2002), supports his negligence claim.

Berish, however, is distinguishable. The plaintiffs in that case, the trustees of a condominium unit owners' association, had sued the condominium developer and general contractor asserting negligent construction among other claims. The trial judge dismissed

---

[5]*See First Amended Class Action Complaint ¶ 32 ("When Plaintiff took Plaintiff's Vehicle to an authorized General Motors mechanic, Lannan Chevrolet in Woburn, Massachusetts, for repairs, he was told that the defect was known as "piston slap....").*

[6]*At this procedural stage, the issue is whether the plaintiff has pleaded damages, not whether he can prove he actually sustained a cognizable loss.*

the negligence claim, concluding it was barred by the economic loss doctrine because the only damage alleged was the expense the plaintiffs would incur in correcting the allegedly defectively designed and constructed condominium. The plaintiffs had not, he found, pled any personal injury or physical damage to property separate from the allegedly defective building. That decision was reversed on appeal by the Massachusetts Supreme Judicial Court, which held the lower court erred in concluding "the complaint did not allege damages beyond what [the economic loss] doctrine prohibits," [7] *id.* at 975, as it was reasonable to infer from the allegations in the complaint that the alleged defective construction caused property damage beyond the defects in the condominium units themselves, including water damage to the units.[8]

---

[7]*The court defined economic loss to include "'damages for inadequate value, costs of repair and replacement of the defective product or consequent loss of profits without any claim of personal injury or damage to other property.'" Berish, 770 N.E.2d at 975 (emphasis added) (quoting Marcil v. John Deere Indus. Equip. Co., 403 N.E.2d 430, 434 n.3 (1980)).*

[8]*For Gouthro's argument to succeed, the court would have to equate a vehicle engine that had an allegedly defective component with a condominium. As the plaintiff notes, Massachusetts' highest court did that in McDonough v. Whalen, 313 N.E.2d 435, 438 (Mass. 1974), but it was in an entirely different context. Prior to McDonough, Massachusetts law imposed tort liability for negligently made products, despite a lack of privity, unless the alleged tortfeasor was a building contractor. "[B]uilding contractors were not liable for injuries or property damage sustained by persons not in contractual relation with them after their work was completed and accepted by the owner or their employer." Id. The Massachusetts Supreme Judicial Court decided to overrule the contractor nonliability rule, stating: "there is no sound reason to treat a builder of houses or other realty structures differently from a manufacturer of chattels ... And the ordinary person buying such a house is in no better position to discover hidden dangers caused by the negligent construction than is the purchaser of a defective bottle of perfume ... or of an automobile." Id. at 438-39. (citations omitted). Sound reasons do exist, though, for treating the plaintiff's automobile engine differently from the condominium in Bornstein.*

While the Massachusetts courts apparently have not addressed the economic loss issue when the defect was in an integrated product, such as an automobile, others have, including the Supreme Court in East River Steamship Corp. v. Transamerica Delaval, Inc., 476 U.S. 858 (1986).[9] The plaintiffs in East River Steamship Corp, charterers of four supertankers, sued the manufacturer of the ships' turbines in tort, alleging that defectively designed and manufactured turbine components damaged the turbines. The Court held the plaintiffs were barred from recovering for damage the product did to itself, concluding that because each turbine was supplied as an integrated package, "each is properly regarded as a single unit." *Id.* at 867. The Court observed that when the only injury is to the product itself, the need for a remedy in tort is reduced. In that situation, when "the product has not met the customer's expectations, or, in other words, that the customer has received 'insufficient product value,'" warranty remedies under contract law are best suited to compensate for the loss. *Id.* at 872.

Resolution of the issue requires the court to define the relevant product -- does it consist of the defective component or the finished product into which the component is integrated. When addressing claims based on defective components, most courts have held that the relevant "product" is the finished product into which the component is integrated.

---

[9]*In East River Steamship Corp., the Supreme Court applied the economic loss doctrine in the context of federal admiralty law, which has generally been developed by the judiciary, drawing from state and federal sources, and is "an amalgam of traditional common-law rules, modifications of those rules, and newly created rules." East River Steamship Corp. 476 U.S. at 865. As admiralty law incorporates the concepts of negligence and products liability, the Court's discussion of, and rulings pertaining to, the economic loss doctrine in East River Steamship Corp. have been cited in nonadmiralty cases. E.g. Trans States Airlines v. Pratt & Whitney Canada, Inc., 130 F.3d 290 (7th Cir. 1997).*

*E.g*. Trans States Airlines v. Pratt & Whitney Canada, Inc., 130 F.3d 290 (7th Cir. 1997) (gas turbine engine and airframe damaged by defective engine were an integrated unit of airplane for purposes of economic loss doctrine);[10] American Eagle Ins. Co. v. United Techs. Corp., 48 F.3d 142 (5th Cir. 1995) (as defective engine was installed in aircraft prior to plaintiffs' purchase and there was no evidence parties bargained separately for individual components of aircraft, aircraft hull did not qualify as 'other property' damaged by defective engine component).  "'Since all but the very simplest of machines have component parts, [a contrary] holding would require a finding of 'property damage' in virtually every case where a product damages itself.  Such a holding would eliminate the distinction between warranty and strict products liability.'"  East River Steamship Corp. 476 U.S. at 867 (quoting Northern Power & Engineering Corp. v. Caterpillar Tractor Co., 623 P.2d 324, 330 (Alaska 1981)). The court concludes the Massachusetts Supreme Judicial Court would follow East River Steamship Corp. and its progeny[11] and finds that because Gouthro purchased a single product with integrated parts from GM the economic loss doctrine precludes his negligence claim.[12]

---

[10]*The 7th Circuit had certified several questions to the Illinois Supreme Court pertaining to the economic loss doctrine and the state court concluded the focus of the inquiry, when deciding whether a product should be characterized as one or several, is what the parties bargained for.  The Illinois court determined that because the plaintiff in that case had contracted for a fully integrated aircraft, complete with engine, the engine and airframe would not be viewed as two separate products.*

[11]*The economic loss doctrine had its inception in Seely v. White Motor Co., 403 P.2d 145 (Cal. 1965).*

[12]*Although East River Steamship Corp. involved a commercial transaction, the doctrine has been extended to transactions involving individual consumers.  See e.g.*

Prayer for Declaratory and Injunctive relief

GM seeks the dismissal of the plaintiff's requests for declaratory and injunctive relief, contending that declaratory judgment is not an appropriate remedy for past conduct and that an injunction would not be proper because, based on the allegations of the complaint, there is no future conduct to enjoin. The complaint does not, GM asserts, allege that it is continuing to manufacture or sell vehicles with the allegedly defective engine or that there is any imminent danger that the plaintiff will purchase a vehicle with the same defect. That aspect of the defendant's motion will be denied, as the prayer for relief is not part of the claim. *See* Fed.R.Civ.P. 54(c)("Except as to a party against whom a judgment is entered by default, every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in the party's pleadings.").

Breach of Warranty

GM contends the plaintiff's express warranty claim is deficient for lack of allegations that it has refused to repair any defect, other than noise. His implied warranty claim is undermined, GM argues, by his failure to allege that his vehicle is unfit for transportation. Neither argument is persuasive; the plaintiff has alleged facts sufficient to support both warranty claims.

Massachusetts Consumer Protection Act

GM contends the plaintiff cannot assert a claim under the Massachusetts consumer protection statute, Mass. Gen. Laws ch. 93A, §§ 2, 9, because he has failed to plead facts

---

*Werwinski v. Ford Motor Co.,* 286 F.3d 661, 671 (3d Cir. 2002).

showing he suffered damages. As this argument has been previously addressed and rejected, it does not provide a basis for dismissal of this cause of action.[13] *See generally* Holtzman v. General Motors Corp., 2002 WL 1923883, at *4 (Mass. Superior. Ct. 2002) ("Having pleaded breach of warranty, the plaintiffs have pleaded a Chapter 93A claim.").

Accordingly, the defendant's motion is **GRANTED** as to the plaintiff's negligence claim and **DENIED** as to his warranty and Massachusetts consumer protection act claims. The plaintiff's negligence claim is **DISMISSED**.

**IT IS SO ORDERED**.

Dated this 8th day of August, 2005.

JOE HEATON
UNITED STATES DISTRICT JUDGE

---

[13]*As the court has found the plaintiff has pleaded he has been damaged by the piston slap defect, the court need not address his argument that Massachusetts' consumer protection statute merely requires proof of injury.*