## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| In re:  General Motors Corporation, | ) | Case No.  MDL 04-1600 |
| "Piston Slap" Products Liability Litigation, | ) | Judge Joe Heaton |
| | ) | |
| Judge Joe Heaton | ) | |

**This document relates to:**
***Haehn v. General Motors Corporation*, Cause No. 04-CIV-1250;**

## <u>ORDER</u>

Plaintiffs Michael Haehn, the owner of a 2002 Chevrolet LS 1500 truck, and Timothy Fields, the owner of a 2002 GMC Sierra HD truck, filed a class action complaint against General Motors Corporation ("GM") premised on an alleged defect in certain car and truck engines it designed and manufactured.[1]  In addition to claiming the defendant breached express and implied warranties and was unjustly enriched, and seeking injunctive and declaratory relief, the plaintiff alleges GM violated the Kansas Consumer Protection Act. GM has moved to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(6) and 9(b), contending it fails to state a claim and does not allege misrepresentation under the state consumer law with the required particularity.[2]

When considering a 12(b)(6) motion, all well-pleaded factual allegations in the complaint are accepted as true and those allegations, and any reasonable inferences that

---

[1]*The plaintiffs filed the complaint on behalf of themselves and all others who purchased from a GM authorized dealer within the State of Kansas any new 1999-2003 model year GM car or truck with a 3.1,3.4,4.8,5.3,5.7(LS1), 6.0 or 8.1 liter engine.*

[2]*Although it pertains primarily to a different plaintiff, the court has not considered the extraneous information (plaintiff Massari's interrogatory answers) GM refers to in its reply brief.*

might be drawn from them, are construed in the light most favorable to the nonmoving party. *See* Clark v. State Farm Mut. Auto. Ins. Co., 319 F.3d 1234, 1240 (10th Cir. 2003). Dismissal is appropriate "'only when it appears that the plaintiff can prove no set of facts in support of the claims that would entitle the plaintiff to relief.'" *Id.* (quoting McDonald v. Kinder-Morgan, Inc., 287 F.3d 992, 997 (10th Cir. 2002). Reviewing the complaint under that lenient standard, the court concludes the defendant's motion should be granted in part and denied in part. The rationale for the court's decision follows a brief summary of the plaintiffs' allegations.

In their complaint, the plaintiffs assert that certain engines, including those in their GM trucks, that the defendant designed and manufactured for its 1999-2003 model year cars and trucks had a defect, referred to as piston slap, that resulted from excessive clearance between the pistons and the sides of the cylinder walls or bores. Piston slap, they allege, causes a loud knocking noise, damages the engine, wastes fuel and oil, causes significantly higher vehicle emissions, reduces the vehicle's power and performance, and lowers the vehicle's resale value. The plaintiffs claim that when their truck engines began to make a loud knocking noise after start-up they took them to the Chevrolet dealerships where they had purchased the vehicles.[3] At that time both trucks were under warranty.[4] The service representatives informed the plaintiffs that the sound was "normal engine noise" and a

---

[3]*Plaintiff Fields also took his vehicle to Bennet AutoPlez in Salina, Kansas. The complaint does not indicate whether it is an authorized GM dealership.*

[4]*The plaintiffs' trucks were covered by GM's new vehicle limited warranty and plaintiff Haehn also purchased an extended warranty.*

"normal condition."

The plaintiffs contend that several Technical Service Bulletins GM issued in 2001 and 2003 not only demonstrate that GM was aware of the piston slap problem, but reveal the defendant's attempt to avoid liability and conceal the negligent design or manufacturing defect. They also allege that as a result of complaints GM offers owners extended 6 year/100,000 mile warranties on the engines and engine parts, but then refuses to cover piston slap under the new warranty.[5]

Citing "no-injury" product defect cases, the defendant initially contends the plaintiffs cannot maintain an action under any of their legal theories for a defect that has not caused a compensable injury. This argument fails, however, as GM ignores the plaintiffs' allegations, liberally construed, that the "defect had actually manifested itself in their vehicles," Briehl v. General Motors Corp., 172 F.3d 623, 627 (8th Cir. 1999), and their allegations of injury, particularly their claim that piston slap harms the engine. The assertions of actual, present damage distinguish this case from those GM relies on, in which the plaintiffs "concede[d] they were not among the injured," Rivera v. Wyeth -Ayerst Labs., 283 F.3d 315, 320 (5th Cir. 2002) or were essentially seeking to recover for a "potentially life-threatening defect." Lee v. General Motors Corp., 950 F.Supp. 170, 172 (S.D.Miss.

---

[5]*Plaintiff Fields apparently was given a Component Letter warranty, as the complaint alleges that his vehicle is still covered by it. Class Action Complaint, ¶42. The circumstances under which it was obtained are not, however, alleged.*

1996).[6] It is true the amended complaint does not clearly and explicitly allege that the plaintiffs' engines suffered from excessive piston-to-bore clearance or that their engines were damaged, used excessive oil or had sustained any of the other specific consequences alleged to stem from the "piston slap" defect.   However, under the liberal pleading standard of Fed.R.Civ.P. 8(a), the court broadly interprets the plaintiffs' complaint as making such allegations.  In reaching that conclusion a further word about the terminology the plaintiffs employ is warranted.  The plaintiffs have used the term "piston slap" in various ways, depending on the context.  At times, the plaintiffs are careful to identify the alleged underlying defect as excessive piston-to-bore clearance. They term this defect "piston slap." At other times the plaintiffs refer to "piston slap" as the noise resulting from the defect, a subtle but potentially important shift.  As the defendant correctly notes, noise by itself is not a "defect" within the meaning of warranty claims, both contractual and pursuant to the Uniform Commercial Code or Magnuson-Moss Warranty Act, or under many states' consumer laws.  *E.g.*, Hasek v. DaimlerChrysler Corp., 745 N.E.2d 627 (Ill.App.Ct. 2001); Miller v. DaimlerChrylser Motors Corp., 2001 WL 587496 (Ohio Ct.App. 2001).

To establish an actionable defect, the plaintiffs must allege and ultimately prove not just that their vehicles were noisy, or that they generated what the plaintiffs view as excessive noise, but that the vehicles in fact suffered from the underlying defect alleged – that the excessive piston-to-bore clearance resulted in engine damage, increased oil consumption and

---

[6]*At this procedural stage, the issue is whether the plaintiffs have pleaded damages, not whether they can prove they actually sustained a cognizable loss.*

4

the like.  For present purposes the question is whether the plaintiffs have sufficiently pleaded the requisite defect.  The court concludes they have.

Breach of Warranty

GM contends the plaintiffs' express warranty claim is deficient for lack of allegations that their vehicles exhibit or suffer from piston slap or that GM has refused to repair a defect in their engines or indicated an intent not to repair their engines under the warranty if premature failure occurs.  The plaintiffs' implied warranty claim is undermined, GM argues, by their failure to allege that their vehicles' engines have failed in any way or are unfit for transportation.  Neither argument is persuasive; the plaintiffs have alleged sufficient facts to support both warranty claims.

Kansas Consumer Protection Act

GM initially attacks the plaintiffs' state consumer law claim on the ground the plaintiffs did not plead facts establishing they have sustained a loss as required by the Kansas Consumer Protection Act ("KCPA"), Kan. Stat. Ann. § 50-623, *et seq.*  The court has previously addressed and rejected GM's contention that the complaint lacks allegations of injury.

As another ground for dismissing the KCPA claim, GM argues that the plaintiffs have not alleged misrepresentation with the particularity required by Fed.R.Civ.P. 9(b).  Assuming the heightened pleading requirement applies to a KCPA misrepresentation claim, the court finds the allegations in ¶¶ 56-58 suffice.  At a minimum, the plaintiffs assertion that GM provided extended warranties via the Component Letters, but simultaneously  refused to

repair/replace the alleged defective engines, is enough to allege that a "supplier [has] engage[d] in [a] deceptive act or practice in connection with a consumer transaction."  Kan. Stat. Ann. § 50-626(a).

GM contends that even if the plaintiffs have stated claims under KCPA as individuals, the putative class's statutory claim for damages should be dismissed because the complaint does not allege a per se violation of the Act.   Under the KCPA, a consumer injured by a violation of the Act may bring a class action for damages caused by one of the deceptive or acts or practices listed in Kan. Stat. Ann. §§ 50-626 or an unconscionable act or practice listed in 50-627.[7]  Kan. Stat. Ann. § 50-634(d)(1).  The plaintiffs respond that they have pleaded a per violation of KCPA, by alleging violations of § 50-626(b)(1)(A), (D) and (b)(8) and § 50-627(b)(3).

The Kansas Comment to §50-626 explains the deceptive practices that constitute per se violations of the consumer protection act and GM's alleged behavior is not the type of conduct the legislature intended to proscribe by § 50-626(b)(1)(D) or (8).  Kan. Stat. Ann. § 50-626, Kansas Comment 2, 1973.  GM's alleged acts might be characterized as a violation of §50-626(b)(1)(A), which "forbids such conduct as misrepresenting the durability or components of a product." § 50-626. Kansas Comment 2, 1973. This section of the Act is obviously designed to thwart misrepresentations made in the context of a sale, but the complaint lacks any allegations as to when, where and by whom alleged misstatements regarding the quality of the engines were made pre-purchase.  Section 50-626 does not,

_____

[7]*A violation of §50-640 also will suffice, but it pertains to door-to-door sales.*

6

therefore, support the plaintiffs' class action damages claim.

The plaintiffs' reliance on § 50-627(b)(3) is similarly misplaced.  GM's alleged misconduct cannot be equated with "the sale of two expensive vacuum cleaners to two poor families whom the salesman knows, or has reason to know, share the same apartment and the same rug."  Kan. Stat. Ann. § 50-627, Kansas Comment 2, 1973.  Therefore, the plaintiffs' class action damages claim under KCPA will be dismissed, but the plaintiffs are granted ten days to amend their complaint to state a class damages claim under the statute, if that can be accomplished.

<u>Unjust Enrichment</u>

Dismissal of the plaintiffs' unjust enrichment claim is necessary, GM asserts, because Kansas does not allow a party to recover under a quasi-contractual theory when a valid contract exists.  While the defendant is correct that the plaintiffs may not prevail on their unjust enrichment claim if an "express contract is outstanding covering the same subject," Emanuel Home v. Bergin, 274 P. 284, 285 (Kan. 1929), they still may plead an equitable claim and go to the jury on both.  *Id.*  Fed.R.Civ.P. 8(e)(2) permits a party to "state as many separate claims or defenses as the party has regardless of consistency and whether based on legal, equitable, or maritime grounds."  The plaintiffs unjust enrichment claim is not subject to dismissal at this procedural juncture.

Accordingly, the defendant's motion is **GRANTED** as to the plaintiffs' class action damages claim under the Kansas Consumer Protection Act and in all other respects is **DENIED**.  The plaintiffs are granted **ten (10) days** within which, if they so elect, to amend

7

their KCPA claim.

**IT IS SO ORDERED**.

Dated this 8th day of August, 2005.

_____

JOE HEATON
UNITED STATES DISTRICT JUDGE